Ralph L. KENNEDY, Appellant,

v.

John BLOCK, Secretary U.S. Department of Agriculture, Appellee,

and

Gilliam Court, Ltd., A Limited Partnership, Defendant.

No. 85–1624.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1985.

Decided March 10, 1986.

Jamie Aliperti (Martin Wegbreit, Client Centered Legal Services of Southwest Virginia, Inc., on brief), for appellant.

Thomas D. Edmondson, Office of the General Counsel, U.S. Dept. of Agriculture, Washington, D.C., (James Michael Kelly, Associate General Counsel, Raymond W. Fullerton, Asst. Gen. Counsel, Washington, D.C., on brief), for appellee.

Before PHILLIPS, MURNAGHAN and SPROUSE, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Following his receipt of a notice terminating his lease in a federally subsidized housing complex, Kennedy brought an action in the United States District Court for the Western District of Virginia, seeking declaratory and injunctive relief against Block, as head of the subsidizing federal agency, and Gilliam Court, Ltd., his private landlord. The district court denied relief on the merits, and after the parties reported that the underlying dispute between Kennedy and his landlord had been settled, refused to vacate the judgment as moot, finding that the controversy was "capable of repetition, yet evading review." On appeal, we conclude that the controversy between the parties is moot, and remand to the district court with directions to vacate its judgment on that basis.

I

Ralph Kennedy is a tenant at Gilliam Court, a privately owned apartment complex in Wise, Virginia, whose construction was subsidized by funds provided by the Farmers Home Administration (FmHA). The FmHA also subsidizes Kennedy's monthly rent.

On August 7, 1984, Kennedy received a letter indicating that his lease at Gilliam Court would terminate 30 days after he received the notice. The letter alleged as cause for the eviction harassment of neighbors by Kennedy. Kennedy made a request on August 14, 1984, for an administrative hearing under the FmHA Tenant Grievance and Appeals Procedure, 7 C.F.R. §§ 1944.551 to –.559 (1985). By an August 23 letter, the manager of the apartment complex refused the hearing request, noting that evictions were no longer covered under FmHA's appeals procedures. This August 23 letter also detailed the incidents and lease violations that formed the cause for Kennedy's eviction.

Kennedy then commenced this action in the district court, filing a complaint in which he sought declaratory and injunctive relief, and requested a preliminary injunction to prevent the defendants from instituting an eviction action in the state courts of Virginia. Following an evidentiary hearing, the district court entered a preliminary injunction. Supplemental memoranda were filed by both parties.

On April 15, 1985, the district court issued a final order and opinion that denied Kennedy's motion for a permanent injunction, dissolved the preliminary injunction, and granted judgment for the defendants on the merits. The court found that a pre-eviction administrative appeal was not required by the Housing Act of 1949, 42 U.S.C. § 1480(g) (1982), that FmHA's decision to remove evictions from the coverage of its administrative grievance procedures

was not arbitrary and capricious nor an abuse of discretion in contravention of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1982), and that Kennedy's due process rights were adequately protected, in the absence of an administrative appeal, by a state court eviction action. *Kennedy v. Block*, 606 F.Supp. 1397 (W.D.Va.1985).

Kennedy gave timely notice of appeal but then moved in the district court for relief from judgment. The basis for the motion was that a settlement had now occurred between Kennedy and Gilliam Court. Under the settlement, Gilliam Court had dropped all claims and charges against Kennedy, and promised not to seek his eviction. The district court treated the motion as a motion to amend or alter the judgment under Rule 59(e), but declined to give the requested relief. By an amended final order the court instead dismissed Kennedy's claims against Gilliam Court, denied the claim against Secretary Block, and ordered that judgment be entered in accordance with its April 15 order. The district court found that the entry of final judgment on the merits was appropriate because the controversy between Kennedy and the defendants was "capable of repetition, yet evading review." Kennedy noted a further appeal from this amended order.

## II

■ The Constitution authorizes federal courts to hear cases and controversies, U.S. Const. art. III, § 2, and by that limitation forbids the consideration by federal courts of matters that have become moot. *Powell v. McCormack*, 395 U.S. 486, 496 n. 7, 89 S.Ct. 1944, 1950 n. 7, 23 L.Ed.2d 491 (1969). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 496, 89 S.Ct. at 1951. Kennedy's claims before this court, and those decided

by the district court, address the procedures to which the defendants must adhere before they may successfully pursue Kennedy's eviction by state judicial process. Before he settled the dispute with Gilliam Court, Kennedy possessed a real interest in the outcome of this litigation, for he had received an eviction notice, been denied an administrative hearing, and faced an eviction proceeding in state court if he refused to leave his apartment by the date specified in the notice of termination.

■ Kennedy and Gilliam Court settled their differences, however, and as a result Gilliam Court has promised not to seek Kennedy's eviction. Kennedy continues to live at Gilliam Court, and apparently does so without the fear that the complaints that provoked his notice of termination in 1984 will subject him to any future threats of eviction. Under our normal standards for determining whether we have before us a "case or controversy" susceptible of adjudication, our inquiry would end here, for Kennedy is without the real interest in "live" issues that should be possessed by a party before a federal court. Kennedy urges us to conclude, however, that his claims are "capable of repetition, yet evading review," and that it therefore would be inappropriate to label this controversy moot. The government appears to adopt Kennedy's position on this issue.[1]

■ The mootness doctrine, if applied in its most rigorous form, would prevent judicial review of all controversies that are inherently short-lived. The "capable of repetition, yet evading review" exception to the general rule of mootness as enunciated in *Southern Pacific Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), is designed to avoid this in proper cases. In the absence of a class action,

---

1. Federal courts are not bound by an assertion or concession by the parties to an action that a matter is not moot. *See Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (parties agreed during argument that case not moot; Court, however, disposed of case on mootness grounds). Rather, the mootness doctrine is a constitutional or prudential limitation upon the competence of federal courts to decide particular cases and is properly examined by the court whether or not the parties choose to address it. *See Brady v. Thurston Motor Lines*, 726 F.2d 136, 146 (4th Cir.1984).

this special exception is limited to situations where two conditions exist: (1) the challenged action must be in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there must exist a reasonable expectation that the same complaining party will be subjected to the same action again. *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam). *See also Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam); *Illinois State Board of Elections v. Socialist Workers Party,* 440 U.S. 173, 187, 99 S.Ct. 983, 991, 59 L.Ed.2d 230 (1979).

Kennedy can only avert the mooting effect of his settlement, then, upon a showing both that there is a reasonable probability that he will again be required to assert his claims and that if he is again faced with eviction, the eviction process will be so short-lived that he will be unable then fully to litigate his claims.

Both Kennedy and the government rely, in suggesting nonmootness, upon several cases which we have found recently to come within the exception. *See, e.g., Harris v. Bailey,* 675 F.2d 614, 616 (4th Cir. 1982) (garnishment of a bank account); *Sinai Hospital of Baltimore, Inc. v. Horvitz,* 621 F.2d 1267, 1269 n. 3 (4th Cir.1980) (labor contract dispute). In those cases, we found present in the dispute claims that were by their nature so short-lived that effective judicial review could not be had given ordinary rules of mootness. In *Harris,* for example, we concluded that a state garnishment procedure was a process whose constitutionality could not be fully litigated while the dispute was live, but was also a deprivation that the subject of the garnishment could be reasonably expected to suffer again. 675 F.2d at 616. Thus, both prongs of the "capable of repetition, yet evading review" test were found in *Harris.*

In the case before us, by contrast, we would be hard put to conclude that Kennedy has shown the applicability of either condition of the mootness exception.

Kennedy asks us to analogize his status as a tenant to that of parties in other cases where this court has found a happening to be "capable of repetition," *see Harris,* 675 F.2d at 616 (garnishment); *Sinai Hospital* (labor contract dispute); *see also In re Knight Publishing Co.,* 743 F.2d 231, 233 (4th Cir.1984) (subjection of a newspaper to closure and sealing order); *Withers v. Levine,* 615 F.2d 158, 161 (4th Cir.1980) (incarceration of a prisoner in a medium security prison). It is unclear to us upon the record, however, that Kennedy is reasonably likely again to be threatened with eviction. Kennedy may well choose to abide by the terms of his lease, and we have no basis for concluding that the baseless threats of neighbors will trigger a new notice of eviction.

There is no need for us to determine whether Kennedy's claims are capable of repetition, however, for even if they are, they do not satisfy the requirement that they would evade review should they again arise. Kennedy's lease at Gilliam Court provides that the lease may not be terminated earlier than 30 days after the receipt by Kennedy of an eviction notice. Lease Agreement, ¶ 5(c)(2)(B). Should Kennedy fail to vacate his apartment after receiving a termination notice, Gilliam Court could obtain his eviction only by invoking the judicial procedures for eviction available under Virginia law. *See* 7 C.F.R. § 1944.-553(f) (1985). Upon receipt of an eviction notice, then, Kennedy will have a choice of at least two forums in which he might press the claims that mootness prevents him from asserting here. First, as he did here, Kennedy might seek declaratory and injunctive relief in an action filed in federal district court. In this case, Kennedy obtained a preliminary injunction preventing his landlord from commencing an eviction proceeding, and this injunction protected him from state eviction procedures while the district court reviewed his claims. Such a remedial route would be available to Kennedy if he is again notified that his lease will be terminated, and a district court will have the power to enjoin the

commencement of eviction proceedings while Kennedy's claims are reviewed. Thus, even if Kennedy's possible eviction is an occurrence capable of repetition, it will not be one that evades review. Moreover, should a district court fail to afford Kennedy the chance to make his claims free of the threat of imminent eviction, Kennedy would have a remedy in this court in the form of an interlocutory appeal from the district court's denial of his request for injunctive relief. *See* 28 U.S.C. § 1292(a)(1) (1982). Finally, if the district court's decision on the merits of Kennedy's claims were then to be adverse to Kennedy, Kennedy might then seek further review and at the same time attempt to obtain from either the district court or the court of appeals a stay or injunction pending appeal. Fed.R.App.P. 8(a).

Kennedy will also have the opportunity to make his claims in state court. Because his eviction can only be obtained by the initiation of an action for unlawful detainer in the general district or circuit courts of Virginia, *see* Va.Code §§ 8.01–124, –126 (1984), Kennedy will be permitted to raise his federal claims in response to the landlord's attempt to evict him by such procedures in state court. If the landlord commences an action for unlawful detainer by a motion for judgment in a circuit court, *see* Va.Code § 8.01–124, Kennedy may make a responsive pleading that raises all of his defenses to the attempt to evict him. Va. Rule of Court 3:5 (1985). If Gilliam Court obtains a summons for unlawful detainer in general district court, Kennedy may appear on the return date specified on the warrant, and raise his claims in answer to the summons. Va. Rule of Court 3D:3 (1985).

Because Kennedy's claims now before us are moot as a result of the settlement of the dispute between Kennedy and Gilliam Court, and because we have determined that Kennedy's claims, should they again arise, would not evade review, we decline to decide the merits of the controversy before us. Our decision is predicated upon the constitutional direction that we resolve only real cases and controversies, but we note also that, as a prudential matter, this case is particularly unfit for adjudication. Without having before us parties who possess a vital stake in the outcome of the litigation, we would be asked, should we accept the parties' invitation to decide this case now, to make complicated and even speculative factual and legal judgments.

In a lengthy opinion, the district court rejected Kennedy's arguments that Congress required FmHA to supply administrative appeals to parties like Kennedy when it amended the National Housing Act in 1980, that the FmHA was arbitrary and capricious and abused its discretion when it amended its own regulations to remove evictions from the ambit of its administrative appeals procedure, and that state judicial proceedings were an inadequate safeguard of Kennedy's due process interests. See *Kennedy v. Block,* 606 F.Supp. 1397 (W.D.Va.1985).

Were we now to consider this case on the merits, we similarly would be required to review the language and legislative history of the 1980 Amendments to the Housing Act to determine whether the FmHA is statutorily bound to afford Kennedy a pre-eviction administrative hearing. If we concluded that the agency is not subject to such a mandate, we then would assess whether the agency's decision to amend its appeals procedures violated the Administrative Procedure Act.

■ Finally, if Kennedy failed to prevail in his claims that the Housing Act of 1949 or the Administrative Procedure Act required the provision of an administrative hearing, it would be necessary for us to decide if the eviction procedures in Virginia state courts comport with the due process safeguards described in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In particular, Kennedy has argued before us that in an unlawful detainer action in general district court, see Va.Code § 8.01–126, he would not be assured the benefit of discovery procedures or a written decision, due process requirements implicated by *Goldberg.* Because the contro-

versy between Kennedy and his landlord never reached the stage where Kennedy's eviction was sought in an unlawful detainer action, we could only decide this due process question by hypothesizing the manner in which a state court would utilize the discretion afforded by state law. As a discretionary matter, a general district court in Virginia could provide Kennedy discovery by ordering a bill of particulars, see Va. Rule of Court 3D:4 (1985), and issue subpoenas duces tecum, see Va.Code § 16.1–89 (1982), and has the power to issue a final order that would satisfy the requirements for a written decision specified in *Goldberg*. *See* Va.Code § 16.1–94 (1982).

For us to resolve Kennedy's merit claims at this juncture, then, would inappropriately require this court to guess whether state judges would apply their discretion in such a manner as to protect Kennedy's due process rights,[2] and would involve the further resolution of difficult questions of state and federal law. As both a constitutional and prudential limitation, therefore, mootness commends our refusal to reach the merits of Kennedy's claims. We vacate the judgment of the district court, with directions that this proceeding be dismissed as moot. Dismissal on this basis will of course leave open and unresolved the questions addressed by the district court in its earlier published opinion. *See United States v. Munsingwear*, 340 U.S. 36, 40–41, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950).

VACATED WITH DIRECTIONS.

---

**2.** We observe that were this identical dispute to reach us in a case where the parties had not settled, but where we were similarly asked to anticipate the future procedural course of state court proceedings, we might yet be inclined to find that the due process claim advanced in this case by Kennedy was unripe for federal adjudication.