**Irene P. DICKINSON, Susan Dubose, Jay Ku, William Leiper, William McGinness, Fred H. Wright, and The Natural Rights Center, Petitioners,**

v.

**Lando ZECH, Chairman, Nuclear Regulatory Commission, and United States of America, Respondents.**

No. 88–3267.

United States Court of Appeals, Sixth Circuit.

Argued May 11, 1988.

May 16, 1988.

---

Albert K. Bates, Summertown, Tenn., petitioners.

Charles Mullins, Office of Gen. Counsel, Nuclear Regulatory Com'n, Washington, D.C., for Lando Zech, Chairman, Nuclear Regulatory Commission, and U.S.

Edward S. Christenbury, Gen. Counsel, James E. Fox, Deputy Gen. Counsel, Justin M. Schwamm, Sr., Asst. Gen. Counsel, Philip J. Pfeifer, Thomas C. Doolan, Senior Litigation Atty. (argued), Knoxville, Tenn., for Tennessee Valley Authority, intervenor.

Charles Mullins (argued), Office of Gen. Counsel, Blake A. Watson, Appellate Section, Land & Natural Resources Div., Dept. of Justice, Washington, D.C., for U.S.

Before MARTIN, WELLFORD, and NELSON, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge.

The petitions for review before us arise from the decision of the Nuclear Regulatory Commission to deny the request for emergency relief sought by petitioners Irene P. Dickinson, Susan Dubose, Jay Ku, William Leiper, William McGinness, Fred H. Wright, and The Natural Rights Center.

Petitioners seek to enjoin the full power operation of Unit 2 of the Sequoyah Nuclear Plant by its owner and licensed operator, the Tennessee Valley Authority. During the spring and summer of 1985, TVA determined that its nuclear program was not in compliance with the applicable NRC requirements in many areas. Accordingly, TVA voluntarily shut down its Sequoyah facilities in August of 1985. TVA also voluntarily agreed not to restart any unit without NRC concurrence. This commitment by TVA was confirmed in a September 17, 1985, letter, issued by the NRC pursuant to 10 C.F.R. § 50.54(f). This letter directs TVA to notify the NRC within two working days of any change in TVA's commitment, and, in any event, to notify the NRC ten working days prior to any resumption of operations without NRC concurrence. The NRC at no point took any action to revoke or suspend TVA's operating license for Sequoyah Unit 2.

After approximately 32 months of repairs and restructuring at the Sequoyah plant, TVA met on March 4, 1988, with the NRC Commissioners and stated its belief that Sequoyah Unit 2 was ready to resume operation. On March 22, 1988, the Commissioner voted 5–0 to authorize the NRC staff to permit TVA to restart Sequoyah Unit 2, after it had verified TVA's compliance with the identified "restart items." The Commission's vote followed a review of previously submitted assessments by the NRC staff, the Advisory Committee on Reactor Safeguards, and the results of other NRC staff inspections on a wide variety of technical issues, including the ability of the emergency diesel generators to provide emergency power to the plant in the event of a shutdown or loss of off-site power. The Advisory Committee on Reactor Safeguards had concluded that "the testing and analysis by TVA of the Sequoyah diesel generators have demonstrated their adequacy to perform their safety functions."

Petitioners first contacted the NRC by letter on March 25, 1988, three days after restart had been approved. The NRC treated the letter as a petition for emergency relief. The petition sought "immediate emergency action in the form of an order suspending full power operation of the Sequoyah Nuclear Plant until remedial action can be taken." The petition based its request upon allegations that the Emergency Diesel Generators were not sufficient to assure safe operation at Sequoyah.

In a letter dated March 28, 1988, the Office Director, Mr. Stewart Ebneter, denied the requested emergency relief. In that letter, the director noted that the staff had addressed these allegations in several different reports and that the allegations had been reviewed by consultants who had concluded that the generators were sufficient to perform their assigned safety functions. The letter included the director's observation that the petition "raises no new issues not already considered by the NRC staff." After noting that the request for emergency relief would be denied, the letter concludes that "your technical concerns will be addressed in more detail in a Director's Decision under 10 C.F.R. § 2.206 to be issued shortly." Section 2.206(a) provides that: "[a]ny person may file a request ... to institute a proceeding pursuant to § 2.202 to modify, suspend, or revoke a license, or for such other action as may be proper." 10 C.F.R. § 2.206.

■ Upon review of the § 2.206 petition, the director of the NRC has two options. First, the director may decide to institute a proceeding whereby the licensee is served with an order to show cause why the requested enforcement action should not be taken. The order must inform the licensee of the nature of the alleged violations and of its right to request a hearing. The director's second option is to determine that no show cause proceedings are warranted. If the director chooses this option, he must inform the petitioner in writing of that decision and his reasons for so doing. It is apparently the practice of the Commission to review each denial of a § 2.206

petition to assure that the director has not abused his discretion.

■ In the case at hand, the director has not yet undertaken either of the above two options but has only informed petitioner that no emergency relief will be granted. It is this denial of emergency relief that petitioners ask us to review. Because there has been no judicially reviewable final agency action, we lack jurisdiction to order the relief desired by petitioners.

Section 189(a) and (b) of the Atomic Energy Act of 1954, 42 U.S.C. § 2239(a), (b) (1982), govern which NRC actions are within the subject matter jurisdiction of this court. Those sections provide that "any final order ... in any proceeding" "for the granting, suspending, revoking or amending of any license" "shall be subject to judicial review." Because we hold that the denial of an emergency petition under these circumstances is not a "final order" within the meaning of the above provisions, we hold that we lack subject matter jurisdiction to provide the relief sought by petitioners.

We are persuaded by the reasoning of the court in *Honicker v. United States Nuclear Regulatory Commission*, 590 F.2d 1207, 1209 (D.C.Cir.1978), *cert. denied*, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed. 2d 374 (1979), where it held that a letter from the Commission "denying [an] emergency petition was not a final order or final agency action within the meaning of the review statutes, 28 U.S.C. § 2342(4) and 42 U.S.C. § 2239." As was the situation in *Honicker*, we are presented with a case where the Commission has decided that a petition does not warrant emergency relief. Here, the Commission has stated that the concerns are such that they will be addressed more fully in a decision, pursuant to 10 C.F.R. § 2.206, to be used in the near future.

Like other courts that have addressed the question, we believe an order is final only if it "imposes an obligation, denies a right, or fixes some legal relationship, usually at the consummation of an administrative process." *Natural Resources Defense Council v. NRC*, 680 F.2d 810, 815

(D.C.Cir.1982) (*quoting Honicker,* 590 F.2d at 1209). The denial of petitioner's request for emergency relief by the NRC in this case does not represent the end of that agency's analysis of the issues involved. Indeed, it is clear from the letter denying emergency relief that the NRC contemplates addressing petitioner's concerns more fully in a final decision pursuant to § 2.206. Thus, the letter issued by the NRC does not fix any legal relationship or permanently deny any rights. Accordingly, we hold that because there has been no final order in this case, we lack jurisdiction to review the Commission's non-final actions.

We see no need to resolve at this time the Commission's argument that, under *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Commission's ultimate disposition of the petitioner's request under 10 C.F.R. § 2.206 is unreviewable. We note that in *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985), the Supreme Court expressly reserved the question of whether denials of § 2.206 petitions were "instances of presumptively unreviewable 'agency action ... committed to agency discretion by law' because they involved the exercise of enforcement discretion" under *Heckler v. Chaney.* While the Supreme Court's analysis there of the legislative history may affect the resolution of whether denials of § 2.206 petitions may be reviewable, we are not faced with that question here, where the Commission has merely denied emergency relief. We do note, however, that the fact that the Commission reviews its director's denial of petitions for an abuse of discretion may indicate that there are indeed standards against which a final decision denying the petition may be reviewed by a court. Thus, there may well be "law to apply." Such a result would have the benefit of making the § 2.206 right of petition one that in fact accomplishes its objectives, as the Commission would be thereby constrained from acting arbitrarily by the knowledge that its final decisions are judicially reviewable.

Before concluding, we observe that even if we were to find that the NRC's letter constituted a "final order," we would not grant the injunction requested by petitioners. This court set out the standards for the awarding of traditional equitable relief, pending judicial review, in *Ohio ex rel. Celebrezze v. NRC,* 812 F.2d 288, 290 (6th Cir.1987). We held there that:

> [t]he determination of whether a stay of an agency's order is warranted must be based on a balancing of four factors. These factors are: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

We do not believe petitioners have met their burden of proving that they are likely to prevail on the merits and therefore are entitled to preliminary equitable relief. The record indicates that the NRC has conducted an extensive investigation into TVA's emergency diesel generator system, the basis upon which petitioners urge the NRC not to authorize the restarting of the Sequoyah plant. It is not likely that petitioners will be able to convince this court that the NRC abused its discretion in deciding that the emergency diesel generators at the Sequoyah plant will adequately power the shutdown of a nuclear reactor in an emergency. Such technical determinations are entitled to judicial deference. Similarly, the NRC has conducted an intense and comprehensive technical review, upon which review, the Commission concluded that operation of the Sequoyah plant did not present an undue risk to public health and safety. Accordingly, we believe the risk of an accident in the absence of our enjoining the Commission from issuing emergency relief to be negligible. We believe, therefore, that our decision does not pose a significant risk of irreparable injury to petitioners. Finally, we believe that not only will petitioners not be injured by our failure to issue an injunction, but should we have granted such relief, TVA ratepayers would incur significantly higher rates

and the very public purposes for which TVA was created would be frustrated.

Accordingly, we hold that the March 28, 1988 letter issued by the Nuclear Regulatory Commission to petitioners under these circumstances does not constitute a "final order." Because there has been no final agency action on petitioners' challenges to the Commission, this court is deprived of subject matter jurisdiction. Even if this court did have jurisdiction, we would not be persuaded to issue the relief sought by petitioners.