**Robert REICH, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**The YOUGHIOGHENY AND OHIO COAL COMPANY, a corporation, Defendant.**

**No. C2–92–793.**

United States District Court, S.D. Ohio, Eastern Division.

May 13, 1994.

Steve Vahalik, Columbus, OH, Deborah E. Mayer, Associate Sol., U.S. Dept. of Labor, Washington, DC, for plaintiff.

John R. Estadt, Hanlon, Duff, Paleudis & Estadt Co., LPA, St. Clairsville, OH, for defendant.

## OPINION AND ORDER

GRAHAM, District Judge.

This case concerns the enforcement of a federal lien which attached to the property of the Youghiogheny and Ohio Coal Company ("Y & O") upon its purported failure to pay statutory interest due to the Black Lung Disability Trust Fund (hereinafter the "Fund") as provided for under 26 U.S.C. § 9501 et seq. The interest stems from re-imbursements made to the Fund in connection with final determinations of Y & O's liability for disability benefits payable to Steve Vihalik and medical benefits payable to Edward Turkal, Jones Ferris, Cecil Dutton, Lewis Peterson and George Pothorski.

### I.

The Black Lung Benefits Act, codified as amended at 30 U.S.C. §§ 901–945 (1982) (hereinafter the "Act"), establishes a federal program for compensating coal miners who are totally disabled due to pneumoconiosis. *See* 30 U.S.C. § 901. The Act provides, *inter alia,* for the recovery by disabled miners of expenses they incurred in treating their pneumoconiosis. Typically, the Fund is to pay benefits to claimants initially determined eligible when the putative responsible coal mine operator, as determined in accordance with the regulations of the Secretary, fails to pay these benefits. 26 U.S.C. § 9501(d)(1)(A). Where the employer is ultimately determined liable for payment of these benefits, it must reimburse the Fund with interest. 30 U.S.C. § 934, 20 C.F.R. § 725.608(b).

On September 4, 1992, the plaintiff filed its original complaint which it subsequently amended on May 5, 1993. Plaintiff seeks to collect on the purported liability of the defendant imposed by 30 U.S.C. § 934(b)(1) and to enforce the lien of the United States arising under 30 U.S.C. § 934(b)(2) for interest outstanding on payments made by the Fund to claimants for which the defendant was ultimately liable.

This matter is presently before the Court on cross motions for summary judgment filed by the plaintiff and the defendant. The cross motions raise identical issues. With respect to Count I of the Amended Complaint, the Court must determine whether the plaintiff forfeited its ability to collect interest due and owing where its claims adjuster undercalculated the amount due and the defendant paid that amount. The second issue, relating to Counts II through VI of the Amended Complaint, concerns whether under the Act interest on medical benefits claims begins to accrue from the date of the government's actual disbursements upon an initial determination of eligibility or thirty days after the bills are tendered to the operator for payment.

### II.

The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III.

The parties do not dispute the procedural histories of the six separate claims. In each case, there exists a final administrative determination holding Y & O liable as the coal mine operator for the payment of disability or medical benefits to the individual coal miners. The Fund initially paid benefits to the miners. After a final administrative determination was made, Y & O reimbursed the Fund its principal but refused to pay all or some of the statutory interest claimed by the plaintiff. The specific facts of each particular claim are set forth more fully below:

*CLAIM FOR DISABILITY BENEFITS*

On July 15, 1977, Mr. Steve Vihalik filed a claim under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945, for his total disability resulting from pneumoconiosis. The Department of Labor district director issued an administrative finding of entitlement for Mr. Vihalik on May 21, 1979. The awarded benefits were paid by the Black Lung Disability Trust Fund for the period extending from July, 1978 until September, 1982 in the form of interim benefits as required by 26 U.S.C. § 9501(d)(1)(A); 20 C.F.R. §§ 725.522(b) and 725.701A, pending a formal hearing requested by employer, Y & O, for purposes of controverting the award.

On February 27, 1981, following a formal hearing, Administrative Law Judge Guill awarded Mr. Vihalik benefits to be paid by Y & O for his total disability due to pneumoconiosis. The Administrative Law Judge's award of benefits was affirmed on appeal by the Benefits Review Board. In a letter to the Department of Labor dated March 28, 1986, Y & O accepted liability and reimbursed the Fund in the amount of $23,391.60 for the principal amount of the interim benefits paid to Mr. Vihalik. The Department of Labor received payment on April 7, 1986.

In a letter dated March 2, 1988, a Department of Labor district director informed Y & O that outstanding interest in the amount of $2,707.35 was due to the Fund. Y & O paid this amount to the Fund on March 18, 1988, but on August 2, 1988 a letter was sent from the district director indicating that "interest on benefits was not calculated correctly," and that additional interest in the amount of $11,724.02 was due. Y & O refused to pay the additional interest amount and contested the district director's demand for additional interest in a hearing before Administrative Law Judge Gilday. The Administrative Law Judge concluded that Y & O was not responsible for an additional payment of interest in the sum of $11,724.02. On appeal, the Benefits Review Board reversed the decision of the Administrative Law Judge and the Sixth Circuit subsequently dismissed Y & O's appeal for want of jurisdiction.

*CLAIMS FOR MEDICAL BENEFITS*

In each of the following five causes of action, Y & O initially contested its liability for medical benefits, but ultimately accepted liability or was found liable. Y & O reimbursed the Black Lung Disability Trust Fund for medical benefits amounts initially paid by the Fund in each of these cases, but Y & O refused to pay the statutory interest.

1. *Edward Turkal*

On June 6, 1978, Edward Turkal filed a claim for medical benefits for his disability

due to pneumoconiosis arising from his employment with Y & O as a coal miner pursuant to the provisions of the Act. Y & O controverted Mr. Turkal's claim for medical benefits. As a result, as mandated by 26 U.S.C. § 9501(d)(1)(A), the Fund paid interim expenses incurred in Mr. Turkal's treatment, pending a formal hearing before Administrative Law Judge Musgrove. Prior to the hearing, Y & O withdrew its controversion and the Department of Labor issued an award for medical benefits. On May 2, 1988, the Department of Labor received Y & O's repayment to the Fund in the amount of $210.00 for the cost of the medical benefits previously paid by the Fund. On October 16, 1989, Y & O was notified by the district director that it owed an additional $5,762.90 to the Fund for medical expenses related to Mr. Turkal's treatment, payment for which was made by Y & O and received by the Department of Labor on October 30, 1989. On November 6, 1989 the district director demanded interest in the amount of $3,767.07 which Y & O refused to pay.

## 2. *Jones Ferris*

Y & O controverted a medical benefits claim filed on October 24, 1978 by Jones Ferris under Part B of the Act, 30 U.S.C. §§ 921–930. In response, the Fund paid interim expenses related to Mr. Ferris' pneumoconiosis as mandated under 26 U.S.C. § 9501(d)(1)(A); 20 C.F.R. §§ 725.522(b) and 725.701A. Y & O ultimately agreed to pay medical benefits. On February 19, 1988, the district director at the Department of Labor instructed Y & O to pay medical benefits amounting to $7,332.30 which were previously paid by the Fund. Y & O tendered full payment of the principal amount, which was received by the Department of Labor on March 7, 1988. However, Y & O refused to pay the $3,694.60 interest demanded by the district director in a letter to Y & O dated November 17, 1989.

## 3. *Cecil Dutton*

Y & O controverted a medical benefits claim filed on May 6, 1978 by Cecil Dutton under Part B of the Act, 30 U.S.C. §§ 921–930. In response, the Fund paid interim expenses related to Dutton's pneumoconiosis as mandated under 26 U.S.C. § 9501(d)(1)(A); 20 C.F.R. §§ 725.522(b) and 725.701A. Administrative Law Judge Kerr ordered Y & O to pay Dutton's medical benefits beginning May, 1978. On appeal, the Benefits Review Board affirmed the Administrative Law Judge's decision. Y & O reimbursed the Fund on or about February 2, 1990 in the amount of $2,492.60, in response to the Department of Labor's Supplemental Order dated December 14, 1989 requesting reimbursement from Y & O for Mr. Dutton's medical expenses. The Supplemental Order requested reimbursement in the amount of $2,558.64; however, $66.57 of that request was deducted as noncompensable medical services. Y & O refused the district director's request dated April 23, 1990 for interest in the amount of $2,116.29.

## 4. *Lewis Peterson*

Y & O controverted a medical benefits claim filed on July 10, 1978 by Lewis Peterson under Part B of the Act, 30 U.S.C. §§ 921–930. In response, the Fund paid interim expenses related to Mr. Peterson's treatment for pneumoconiosis as mandated under 26 U.S.C. § 9501(d)(1)(A); 20 C.F.R. §§ 725.522(b) and 725.701A. Y & O agreed, in a letter dated September 17, 1985, to pay expenses incurred for Mr. Lewis' medical treatment. Administrative Law Judge Hillyard ordered Y & O to pay medical benefits commencing January 1, 1974. Y & O reimbursed the Fund in the amount of $21,988.07 in accordance with the Fund's request dated March 3, 1989. Payment was received by the Department of Labor on April 3, 1989; however, Y & O failed to pay interest on the medical expenses. On November 8, 1989, the district director requested $11,763.86 in interest which Y & O refused to pay. Y & O notified the Department of Labor regarding its refusal to pay the interest in a letter dated November 17, 1989.

## 5. *George Pothorski*

Y & O controverted a medical benefits claim filed on September 26, 1979 by George Pothorski under Part C of the Act, 30 U.S.C. §§ 931–950. In response, the Fund paid Mr.

Pothorski's interim medical expenses pursuant to 26 U.S.C. § 9501(d)(1)(A); 20 C.F.R. §§ 725.522(b) and 725.701A. In a formal administrative hearing, Administrative Law Judge Stewart ordered Y & O to pay benefits, including medical benefits, to Mr. Pothorski beginning in February, 1977. On a motion for reconsideration, the Administrative Law Judge amended the onset date to February 1, 1980. In a letter dated December 11, 1989, the Fund requested reimbursement from Y & O in the amount of $5,761.28. Y & O paid the amount of $5,633.23 to the Department of Labor on January 8, 1990. No interest was paid on the medical expenses; therefore, the district director sent a letter dated January 23, 1990 requesting $3,962.72 in interest to be paid. Y & O's refusal to pay the interest was documented in a letter dated January 25, 1990.

On September 8, 1992, Administrative Law Judge Bober issued an order dismissing the medical benefits interest claims against Y & O for lack of subject matter jurisdiction. In response, plaintiff amended the original complaint to include all of the interest owed by Y & O to the Fund. As a result, the Department of Labor recalculated the interest due in the aforementioned medical benefits claims and concluded that interest had been improperly calculated. It was determined that Y & O owed $3,696.06 interest on Mr. Turkal's claim; $2,231.40 in interest on Mr. Ferris' claim; $2,142.56 interest on Mr. Dutton's claim; $9,656.37 on Mr. Peterson's claim; and $3,909.46 on Mr. Pothorski's claim. Y & O refused to pay the recalculated interest totalling $21,635.85. The Department of Labor filed a notice of a lien in favor of the United States pursuant to 30 U.S.C. § 934(b)(2).

Defendant claims it is not obligated to pay the interest sought. With respect to Mr. Vihalik's disability benefits, defendant contends that plaintiff's having collected $2,707.35 in interest from the defendant estops the plaintiff from now seeking further payments of interest. With respect to the remaining counts, defendant maintains that because it reimbursed the Fund within thirty days of notification that it was liable for the benefits, it does not owe any interest on the principal payments.

## IV.

Count II of the Amended Complaint seeks reimbursement of additional interest due on monies paid out of the Fund to Mr. Vihalik for his disability claim. Y & O contends that because the plaintiff sought and accepted an interest payment of $2,707.35, it is estopped from seeking further interest on the claim. Y & O also raises the defense of account stated and settled. Because the parties do not dispute the accuracy of plaintiff's current interest calculation, the Court will move directly to addressing Y & O's defenses to payment.

### EQUITABLE ESTOPPEL

 The defendant contends that the government should be equitably estopped from seeking reimbursement for interest outstanding on Mr. Vihalik's medical benefits claim because the government had previously collected a lesser amount as interest on the benefits paid to Mr. Vihalik. The doctrine of equitable estoppel is an available defense against the government in limited situations. Although the Supreme Court declined to rule that estoppel may never be asserted against the federal government, *see Heckler v. Community Health Services, Inc.*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), "it is well settled that the government may not be estopped on the same terms as any other litigant." *Id.* With respect to a nongovernmental party, the estoppel defense is traditionally available where the following elements are established:

1. The party to be estopped must know the facts;

2. he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;

3. the latter must be ignorant of the true facts; and

4. he must rely on the former's conduct to his injury.

*Richmond v. Office of Personnel Management*, 862 F.2d 294, 297 (Fed.Cir.1988). *See also Mukherjee v. I.N.S.*, 793 F.2d 1006, 1008

(9th Cir.1986); *S.E.C. v. Blavin,* 760 F.2d 706, 712 (6th Cir.1985). However, a party asserting estoppel against the federal government bears additional burdens. *Mukherjee,* 793 F.2d at 1008; *Green v. United States Dep't of Labor,* 775 F.2d 964, 970 (8th Cir. 1985). "At a minimum, estoppel will never be allowed as a defense against the federal government unless the private party demonstrates the presence of the traditional elements of an estoppel ... and that the government engaged in 'affirmative misconduct.'" *Green,* 775 F.2d at 970 (quoting *I.N.S. v. Miranda,* 459 U.S. 14, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982) (per curiam)). *See also Mukherjee,* 793 F.2d at 1008 ("estoppel against the government must rest on affirmative misconduct going beyond mere negligence").

Defendant cites to *Richmond v. Office of Personnel Management,* 862 F.2d 294 (Fed. Cir.1988), *rev'd,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) as general support for his affirmative defense of equitable estoppel. In *Richmond,* the Court of Appeals for the Federal Circuit ruled that the government's providing a retired Navy employee with erroneous oral and written information concerning the law governing his disability benefits constituted sufficient misconduct to estop the Office of Personnel Management from terminating the employee's disability annuity payments. The United States Supreme Court subsequently reversed the decision. *Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). While the government urged the Supreme Court to rule that estoppel would never lie against the government, the Court rested its decision on a narrower ground. The Court held that a claim for payment of money from the Public Treasury contrary to a statutory appropriation is prohibited by the Appropriations Clause of the United States Constitution, Article 1, Section 9, Clause 7, which provides in effect that such money may be paid out only as authorized by a statute. *Id.* at 424, 110 S.Ct. at 2471. However, while not directly addressing the equitable estoppel defense, the Court expressed reservations about entertaining this defense against the federal government. The Court pointed out that it had reversed

every finding of estoppel against the government which it had previously reviewed. "Indeed, no less than three of our most recent decisions in this area have been summary reversals of decisions upholding estoppel claims." *Id.* at 422, 110 S.Ct. at 2470.

■ Turning to the actual elements of estoppel in this case, plaintiff concedes that the defendant has established the first two elements of equitable estoppel with respect to the interest reimbursements for benefits paid by the Fund to Mr. Vihalik. *See* Plaintiff's Memorandum in Reply to Defendant's Opposition to Summary Judgment, filed December 6, 1993, p. 17. However, plaintiff maintains that the remaining elements of the defense have not been proved. The Court agrees.

First, defendant has failed to establish its ignorance of the true facts. The administrative provisions contained in 20 C.F.R. § 725.-608 govern the accrual and computation of interest on interim benefits. Where this regulatory section does not explicitly provide the rate of interest applicable to a given time period, it incorporates by reference statutory provisions of the Internal Revenue Code used to calculate interest. 20 C.F.R. § 725.-608(c)(3). Moreover, the federal register's publication of regulations has the legal effect of providing constructive notice of their contents to all who would be affected by the regulations. 44 U.S.C. § 1507; *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 3–4, 92 L.Ed. 10 (1947). *See also Bennett v. Director, OWCP,* 717 F.2d 1167, 1169 (7th Cir.1983); *Diamond Ring Ranch, Inc. v. Morton,* 531 F.2d 1397, 1405 (10th Cir.1976). Hence, the plaintiff was provided constructive notice of the method of accrual and computation of interest on benefits paid out of the Fund as a result of Mr. Vihalik's claim.

Defendant claims that neither it nor its attorney "had the vaguest understanding of the method of interest computation," *see* Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, filed November 22, 1993, p. 11. This is not a legally sufficient reason for finding that the defendant was ignorant of the true facts. Defendant's constructive notice of the con-

tents of the federal statutes and regulations is binding upon it. *Merrill,* 332 U.S. at 385, 68 S.Ct. at 3–4.

Defendant also argues that it could not possibly ascertain whether the plaintiff's interest calculations on Mr. Vihalik's benefits were accurate because the calculations did not indicate what date ended the period of calculation. Yet, the defendant knew when the district director initially determined that Mr. Vihalik was eligible for benefits and thus knew the date on which the Fund was to begin paying monthly benefits. The defendant also knew the date on which it reimbursed the Fund for the principal of these monthly benefits. Hence, the defendant possessed all the information necessary to calculate the amount of interest due.

Turning to the fourth prong of the estoppel defense, the defendant is required to demonstrate reliance on the plaintiff's conduct and resulting injury. However, the defendant's only claim of injury has been that it was denied the right to consider this matter closed as of the date it paid the interest originally demanded. Defendant has not claimed any monetary loss as a result of the plaintiff's mistake. Indeed, the undercalculation of interest has permitted the defendant to hold on to funds which it would otherwise have had to remit to the plaintiff. Thus, no financial hardship has been shown.

The cases which the defendant cites in support of its detrimental reliance argument involve situations where the private party suffered actual monetary loss. In *Portmann v. United States,* 674 F.2d 1155 (7th Cir. 1982), Portmann sought to estop the postal service from limiting its liability to $500 for her lost package. Portmann claimed that a postal clerk assured her that the package would be fully insured against loss of up to $50,000. *Id.* at 1156. Had the government not been equitably estopped from disclaiming liability for its employee's erroneous advice, Portmann would have lost approximately $3,284, the true value of the contents of the lost package less $500. *Id.* at 1157. Likewise, in *Frantz v. Office of Personnel Management,* 778 F.2d 783, 787 (Fed.Cir.1985), the government was held liable for the results of its erroneous advice where the pri-

vate party faced a potential monetary loss as a result of her reasonable reliance on the information. In the instant case, no actual financial loss has been alleged or proven by the defendant.

The defendant also cites several cases in support of its claim that the "doctrine of administrative finality" establishes detrimental reliance upon the government's March 2, 1988 demand. However, defendant relies on a series of cases in which the government entered into agreements with private parties expressly providing that the agreement constituted a full and final settlement and then attempted to change its position. For example, in *Anthony v. United States,* 987 F.2d 670 (10th Cir.1993), the Internal Revenue Service entered into a settlement agreement with taxpayers over a federal income tax dispute. This agreement contained a finality clause which explicitly stated that the agreement "constituted a final civil settlement of taxes due for the years at issue." *Id.* at 672. IRS employees further assured the taxpayers both orally and in writing that the government intended the settlements to cover all civil liabilities, including interest. *Id.* at 673. Following tax court approval of the settlement, the IRS attempted to collect an additional $19,183.35 in interest. *Id.* at 672. On appeal, the Tenth Circuit determined that the settlement agreement constituted a formal stipulation of the parties which covered all civil liabilities, including interest. *Id.* at 673. Hence, the government was precluded from recovering any interest on the tax deficiencies.

In the instant case, neither the Secretary of Labor nor any employees of the Department of Labor have entered into an agreement with the defendant releasing it from any statutory interest still due and owing. This defendant has neither claimed nor provided written or oral evidence of any such agreement between the parties.

Finally, the Court has been provided no evidence of affirmative misconduct by the plaintiff. Nothing in the present case indicates that the government deliberately lied to the defendant concerning the amount of interest due on Mr. Vihalik's medical benefits payments. The government was obviously

mistaken concerning the amount of interest due. Its billing of the defendant for that amount and accepting payment would constitute negligence, but it does not reach the level of affirmative misconduct which would entitle the defendant to estop the government from seeking to collect on interest due and owing. *Compare Keener v. Eastern Associated Coal Corp.,* 954 F.2d 209 (4th Cir. 1992) (claims examiner's allegedly misinforming a black lung benefits applicant as to the law regarding the eligibility of working miners thereby causing miner to withdraw his application for benefits to which he would otherwise be entitled did not constitute affirmative misconduct).

Since the defendant has failed to establish all elements of the equitable estoppel defense, it shall not be applied against the plaintiff to preclude recovery.

## ACCOUNTS STATED AND SETTLED

The defendant further asserts that the doctrine of accounts stated and settled precludes the plaintiff from recovering the interest owed on the principal of the defendant's reimbursements to the Fund in connection with Mr. Vihalik's claim. The Court again disagrees.

 Under the law of account stated, an arithmetical error in computing the account balance, such as the mistake made by the claims examiner in the instant case, does not discharge the debt previously due. 6 *Corbin,* § 1314 at 276. An account stated is not conclusive when it is shown to be mistaken. 6 *Corbin,* § 1314 at 282.

> If the account is nothing more than the addition and subtraction of numerical items, whether such accounting was done by the two parties together or by one of them whose numerical result was assented to by the other, either party is permitted to show that items were omitted or incorrectly entered or inaccurately computed. It seems clear that a purely unilateral mistake showing too small a balance due, made by the party rendering the account, can be proved by him to invalidate the account stated.

*Corbin,* § 1315, 285–186 (citations omitted). *See also Oil Co. v. Van Etten,* 107 U.S. 325, 1 S.Ct. 178, 27 L.Ed. 319 (1882). *Accord Newburgh v. Florsheim Shoe Co.,* 200 F.Supp. 599, 602–603 (D.Mass.1961).

 The facts of the present case do not evidence the existence of an account stated and settled. The claims examiner's March 2, 1988 letter did not constitute a compromise agreement proffered by the department of labor in an effort to accept less than the full amount of defendant's legal obligation. The letter merely miscalculated interest due, misapplying the legally imposed method of interest computation. *See* 30 U.S.C. § 934; 20 C.F.R. § 725.608. Hence, defendant's payment of $2,707.35 towards its total interest obligation does not operate as an accord and satisfaction. *See Corbin,* § 1292, 177–89, § 1315, 287–88.

The primary effect of the March 2, 1988 statement was "merely to shift the burden of going forward with the evidence to the party who claims the account is incorrect." Calimari & Perillo, *The Law of Contracts,* § 21–9 at 876 (3d Ed.1987). The plaintiff has clearly met its burden of going forward with evidence showing that the account as stated was incorrect and has further established the correct amount of the debt. The defendant has not attempted to contradict plaintiff's corrected computations. Accordingly, the Court finds that the plaintiff is not barred under the doctrine of accounts stated and settled from recovering interest due and owing on the Vihalik account.

### V.

Counts II through VI of the Amended Complaint seek reimbursement for accrued interest on medical benefits payments made from the Fund for which the defendant was ultimately deemed liable. At issue is whether interest on medical benefits payments begins to accrue from the date on which the government disburses funds upon an initial determination of eligibility or the date on which the government upon a final determination of liability presents the operator with copies of the medical bills paid.

## DEFENDANT'S LIABILITY FOR INTEREST

 In addition to monthly disability benefits, the Act allows disabled miners to recov-

er expenses incurred in treating the pneumoconiosis. *See* 30 U.S.C. § 932(a); 20 C.F.R. §§ 725.701 and 725.701A. The term "benefits" is defined in 20 C.F.R. § 725.101(a)(18) as "all money or other benefits paid or payable under section 415 or Part C of title IV of the Act on account of disability or death due to pneumoconiosis." The term embraces medical as well as disability benefits. *See Cook v. Beth–Elkhorn Coal Co.*, 16 BLR 3–452 (April 15, 1992); *Director, OWCP v. Bortz*, 16 BLR 3–136 (Jan. 8, 1992); *Booth v. Beth Energy Mines Corp.*, 15 BLR 3–767 (Oct. 7, 1991).

Pursuant to Section 19 of the Longshore Act,[1] claims for benefits are to be filed with the district director who notifies all interested parties and orders a hearing. 33 U.S.C. §§ 914(a)–919(c). The hearing is conducted by an administrative law judge. 33 U.S.C. § 919(d). An aggrieved party may appeal the decision of the administrative law judge to the Benefits Review Board and then to the appropriate federal court of appeals. *See* 33 U.S.C. § 921. Disputes over particular medical bills as well as threshold questions of miner eligibility and company liability may be addressed through this process. 33 U.S.C. § 919 as incorporated by 30 U.S.C. § 732(a); 20 C.F.R. §§ 725.701 and 725.701A; *Doris Coal Co. v. Director, OWCP*, 938 F.2d 492 (4th Cir.1991).

Where the operator controverts the district director's determination, it is not legally obligated to begin the payment of benefits. 20 C.F.R. § 725.607(a); *Howell v. Unit Coal Corp.*, 774 F.Supp. 429, 431 (E.D.Ky.1991), *aff'd without opinion*, 12 F.3d 212 (6th Cir. 1993); *Lute v. Split Vein Coal Co.*, 11 BLR 1–82 (March 20, 1987); *Survivors of Stanley Siepietowski v. Lehigh Valley Anthracite, Inc., et al.*, 16 BLR 3–128 (Jan. 8, 1992). Instead, the Fund commences payment of the benefits. 26 U.S.C. § 9501(d)(1)(A); 20 C.F.R. §§ 725.420 and 725.522(b). However, the employer must reimburse the Fund once it is ultimately determined to be liable for payment of the benefits. 30 U.S.C. § 934(b)(1). Section 725.420(c) provides:

If a notified operator refuses to commence payment of a claim within 30 days from the date on which an initial determination is made under this section, benefits shall be paid by the fund to the claimant in accordance with § 725.522, and the operator shall be liable to the fund, if such operator is determined liable for the claim, for all benefits paid by the fund on behalf of such operator, *and, in addition, such penalties and interest as are appropriate.*

(emphasis added).

Generally, the employer is liable for payment of benefits upon exhaustion of its remedies. *See, e.g.*, 5 U.S.C. § 704; *Dickinson v. Zech*, 846 F.2d 369, 371 (6th Cir.1988); *Illinois v. Interstate Commerce Comm'n*, 713 F.2d 305, 308 (7th Cir.1983). Likewise, where the parties agree to the amount of liability of the principal debt, payment then becomes due as the administrative proceedings underlying the issue of liability are now moot. *See U.S. v. Munsingwear, Inc.*, 340 U.S. 36, 41, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950); *Powell v. McCormack*, 395 U.S. 486, 496 n. 7, 89 S.Ct. 1944, 1950 n. 7, 23 L.Ed.2d 491 (1969); *Doris Coal Co.*, 938 F.2d at 496; *Kennedy v. Block*, 784 F.2d 1220, 1222 (4th Cir.1986); *Gibraltar Coal Co. v. Haskins*, 749 F.2d 367, 368 (6th Cir.1984). Thus, defendant's liability for the medical benefits claims was finally determined when it agreed to reimburse the Fund for those expenses.

Where an operator has been finally determined to be liable for benefits which had previously been disbursed from the Fund, the operator must reimburse the government with interest. 30 U.S.C. § 934(b)(1) expressly provides:

If—

(A) an amount is paid out of the fund to an individual entitled to benefits under section 932 of this title, and

(B) the Secretary determines, under the provisions of sections 932 and 933 of this title, that an operator was required to se-

---

**1.** Congress has mandated that the procedures outlined in the Longshore Act, 33 U.S.C. § 901 *et seq.*, be followed in administering black lung claims. 30 U.S.C. § 932(a). *See also, Peabody Coal Co. v. Blankenship*, 773 F.2d 173 (7th Cir. 1985); *Director, OWCP v. Peabody Coal Co.*, 554 F.2d 310 (7th Cir.1977).

cure the payment of all or a portion of such benefits,

then the operator is liable to the United States for repayment to the fund of the amount of such benefits the payment of which is properly attributed to him plus interest thereon.

Relevant federal statutes and regulations dictate the applicable interest rates and the method of calculating interest due. 30 U.S.C. § 934(b); 20 C.F.R. §§ 725.608(b) and (c).

These interest assessments apply to both medical and disability benefits paid by the Fund. 20 C.F.R. § 725.522(b) states that where the fund "undertakes the payment of benefits on behalf of an operator or carrier, the provisions of §§ 725.601–725.608 shall be applicable to such operator or carrier." Section 725.601(a), governing reimbursement of the Fund, provides:

> In any case in which the fund has paid benefits, *including medical benefits*, on behalf of an operator or other employer which is determined liable therefore, or liable for a part thereof, such operator or other employer shall simultaneously with the first payment of benefits made to the beneficiary, reimburse the fund (with interest) for the full amount of all benefit payments made by the fund with respect to the claim.

(emphasis added). *See also Director, OWCP v. Bortz Coal Co., et al.,* 16 BLR 3–136 (January 8, 1992).

According to the express provisions of the Code of Federal Regulations, interest accrues from the date of the Fund's remittance until the date of reimbursement. 20 C.F.R. § 725.608(b), governing an operator's reimbursement of the Fund, provides in pertinent part:

> If an operator or other employer fails or refuses to pay any or all benefits due pursuant to an award of benefits or an initial determination of eligibility made by the deputy commissioner and the Fund undertakes such payments, such operator or other employer shall be liable to the Fund for simple annual interest on all payments made by the Fund for which such operator is determined liable, *com-puted from the first date on which such benefits are paid by the Fund,* in addition to such operator's liability to the Fund, as is otherwise provided in this part.

(emphasis added).

The defendant contends that interest does not begin to accrue unless the operator fails to reimburse the Fund within thirty days from the presentment of a demand for reimbursement of documented medical expenses. In support of its position, the defendant relies upon 20 C.F.R. § 725.608(a) which has been interpreted as a ban on prejudgment interest. *See Peabody Coal Co. v. Blankenship,* 773 F.2d 173, 175–76 (7th Cir.1985); *Bethlehem Mines Corporation v. Director, OWCP,* 766 F.2d 128, 131 (3d Cir.1985). Under subsection (a) an operator is not liable for interest on a claimant's benefits from the date of onset of disability. Rather, as stated in the regulation and the cases cited by defendant, interest begins to accrue thirty days after the deputy commissioner makes an initial determination of the claimant's eligibility. *Id.* Reimbursements to the Fund, however, are governed by subsection (b) which expressly calls for the computation of interest from the first date on which benefits are paid by the Fund. *Cf. Peabody,* 773 F.2d at 174 n. 3 (noting without further discussion that since the Fund paid interim benefits to the claimant, it would be seeking reimbursement for all monies paid to the claimant, "including interest accruing from the date the Trust Fund commenced payments. *See* 30 U.S.C. § 934(b)(1); 20 C.F.R. § 725.-608(b)").

The Court notes that subsections (a) and (b) are not inconsistent. The ban on prejudgment interest effectuated by subsection (a) ensures that the operator will not owe interest to an individual claimant prior to an initial determination of eligibility. Likewise, where the Fund is involved, an initial determination of eligibility must occur before the Fund will begin payment of benefits. *See* 26 U.S.C. § 9501(d)(1)(A). Thus, the operator's interest obligation to the Fund under subsection (b) cannot predate an initial determination of eligibility and therefore does not dif-

fer in this regard from its interest obligations to a claimant under subsection (a).

Equitable considerations also weigh in favor of awarding the Fund interest on its money. In order for the plaintiff to be made whole, the defendant would have to pay interest assessed on the money during the period between actual payment and final determination of the operator's liability. Otherwise, the Fund would not be fully compensated for the loss it incurred by paying a debt which was ultimately determined to be the operator's obligation; it would lose the time value of that money while the operator would benefit from the use of the money. *See Bowman v. United States,* 824 F.2d 528, 531 (6th Cir.1987) (government's delay in assessing income tax deficiency does not bar collection of interest since taxpayer had the use of the money during the period for which interest was charged). Thus, holding the operator liable for accrued interest during the period between distribution and reimbursement produces a fair result.

*CALCULATION OF INTEREST DUE*

The statutory provisions outline the rate of interest to be charged on reimbursed monies: the rate "(A) for any period during calendar years 1982, shall be 15 percent, and (B) for any period after calendar year 1982, shall be the rate established by section 6621 of the Internal Revenue Code of 1954, which is in effect for such period." 30 U.S.C. §§ 934(b)(5)(A) and (B). *See also* 20 C.F.R. § 725.608(c). Section 6621 of the Internal Revenue Code states,

> (1) ... The Secretary [of the U.S. Department of Treasury] shall determine the Federal short-term rate for the first month in each calendar quarter.
> 
> (2)(A) ... [T]he Federal short-term rate determined under paragraph (1) for any month shall apply during the first calendar quarter beginning after such month.

26 U.S.C. § 6621(b)(1), (2)(A). The Secretary's regulations at 20 C.F.R. § 725.608(c) take note of the rates of interest mandated by the Black Lung Benefits Act, and add a six percent simple annual interest rate for all amounts that are outstanding prior to January 1, 1982.

Applying the mandated federal short-term interest rates to the amount of the reimbursement from the date of the initial disbursement until the date of reimbursement, the total accrued interest owed to the Fund is $33,359.87. There remains $11,724.02 of unpaid interest on the Vihalik disability claim. With respect to the remaining claimants, defendant owes the following amounts to the Fund as interest on reimbursements made for medical expenses incurred in their treatment: Edward Turkal—$3,696.06; Jones Ferris—$2,231.40; Cecil Dutton—$2,142.56; Lewis Peterson—$9,656.37; George Pothorski—$3,909.46.

*VI.*

Congress has provided a means for the Department of Labor to recover any unreimbursed benefits and accrued interest from a coal mine operator that is finally determined to be liable for payment of these benefits. 30 U.S.C. § 934. The Secretary of Labor is statutorily authorized to place a lien on the property of the operator. According to 30 U.S.C. § 934(b)(2):

> If any operator liable the fund under paragraph (1) refuses to pay, after demand, the amount of such liability (including interest), then there shall be a lien in favor of the United States for such amount upon all property and rights to property, whether real or personal, belonging to such operator. The lien arises on the date on which such liability is finally determined, and continues until it is satisfied or becomes unenforceable by reason of lapse of time.

*See also* 20 C.F.R. §§ 725.603(a), (b). The lien on an operator's property, therefore, "arises on the date on which such liability is *finally determined....*" 30 U.S.C. § 934(b)(2) (emphasis added).

This federal lien arising under section 424 of the Federal Mine Safety and Health Act of 1977 is comparable to a federal tax lien. 30 U.S.C. § 934(b)(3)(A) is applied by substituting an "operator liability lien" for a "tax lien" in section 6321 of Title 26. Moreover, notice of the operator liability lien is to be filed in the same manner as a tax lien. 30 U.S.C. § 934(b)(3)(D); 20 C.F.R. § 725.603(c)(4).

Because the lien arises by operation of law, it is self-executing. 26 U.S.C. § 6321; 30 U.S.C. § 934(b). Hence, the Secretary of Labor does not need to perfect his lien on defendant's property. *Cf. In re Terwilliger's Catering Plus, Inc.,* 911 F.2d 1168, 1176 (6th Cir.1990) ("federal tax lien need not be filed to gain priority over other interests; it is perfected at the time the lien is assessed"), *cert. denied,* 501 U.S. 1212, 111 S.Ct. 2815, 115 L.Ed.2d 987 (1991). The lien arises upon final determination of liability and automatically attaches to defendant's property upon defendant's refusal to reimburse any part of its liability.

Consequently, a lien on defendant's property automatically arose upon the final determination of liability. With respect to the Vihalik claim, the lien arose on December 27, 1985 upon the decision of the Benefits Review Board affirming Administrative Law Judge Guill's award of benefits. With respect to the medical benefits payments, the lien arose upon the defendant's acceptance of liability on the following dates: May 2, 1988 and October 16, 1989 for Mr. Turkal's specific medical expenses; March 7, 1988 for Jones Ferris' specific medical benefits; February 2, 1990 for Cecil Dutton's specific medical benefits; April 3, 1989 for Lewis Peterson's specific medical benefits and January 8, 1990 for George Pothorski's specific medical benefits.

These liens attached upon the defendant's refusal to pay the statutory interest. Defendant tendered its refusal to pay additional interest on the Vihalik account on August 11, 1988. The lien attached on the Turkal, Ferris and Lewis accounts on November 17, 1989, on the Pothorski account on January 25, 1990 and on the Dutton account on May 4, 1990.

The Secretary of Labor may enforce the lien in federal district court where "the proceeding is commenced within 6 years after the date on which the liability was finally determined...." 30 U.S.C. § 934(b)(4)(B). Six years have not elapsed since the final determinations recounted above. Hence, the plaintiff is not barred by the statute of limitations from bringing this action.

## VII.

WHEREUPON, the Court finds that the plaintiff is entitled to judgment as a matter of law on all counts of its Amended Complaint. The Clerk shall enter final judgment in favor of the plaintiff and against the defendant, awarding damages of $33,359.87. Costs shall be taxed against the defendant.

It is so ORDERED.