Robert B. REICH, Secretary, United States Department of Labor, Plaintiff–Appellee,

v.

The YOUGHIOGHENY AND OHIO COAL COMPANY, Defendant–Appellant.

No. 94–3728.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 7, 1995.

Decided Sept. 22, 1995.

---

5. It is not disputed that Atlas properly raised this issue in its initial answer.

Before: RYAN, BATCHELDER, and MOORE, Circuit Judges.

BATCHELDER, Circuit Judge.

In this action to enforce a federal lien, the defendant coal company appeals from the district court's grant of summary judgment in favor of the Department of Labor ("the DOL"), awarding interest on payments made from the Black Lung Disability Trust Fund ("the Fund"). We affirm the judgment of the district court.

## I.

The facts of this case are comprehensively set out in the opinion below, *Reich v. Youghiogheny and Ohio Coal Co.* (*Reich v. Y & O*), 858 F.Supp. 1381 (S.D.Ohio 1994). The case presents two issues: (1) whether, having miscalculated the amount of interest due on interim benefits paid from the Fund and having received the operator's prompt payment of the incorrectly calculated interest, the DOL may correct its calculation and demand additional payment of interest; and (2) with regard to an operator's liability for payment of interest on "medical benefits only" (MBO) claims, whether interest accrues on MBO payments made by DOL from the Fund in the interim prior to thirty days after DOL's presentment of medical bills to the operator.[1]

## II.

The Black Lung Benefits Act (the "Act"), codified as amended at 30 U.S.C. §§ 901—951, was established to provide benefits to coal miners who are totally disabled by pneumoconiosis. 30 U.S.C. § 901 (1986). The Act incorporated the procedural provisions of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901—950 ("the LHWCA"), except as otherwise provided by regulations of the Secretary of Labor. 30 U.S.C. § 932(a); 20 C.F.R. § 725.1(j).

Michael J. Denney, Deborah E. Mayer (argued and briefed), U.S. Department of Labor, Office of the Solicitor, Washington, DC, for plaintiff-appellee.

John G. Paleudis, John R. Estadt (argued and briefed), Gerald Patrick Duff, Hanlon, Duff, Paleudis & Estadt, St. Clairsville, OH, for defendant-appellant.

---

1. This appears to be the first such case to reach a court of appeals. The DOL indicates that there are hundreds of other similar claims presently being disputed. Similar cases are also proceeding through the courts. *See, e.g., B & S Coal Co. v. Director*, 35 F.3d 1041 (6th Cir.1994) (affirming the Benefits Review Board's finding of lack of jurisdiction and holding that the district court is the proper forum in which to contest the DOL's method of calculating interest on MBO payments). *See also Sea B. Mining v. Director, OWCP*, 45 F.3d 851 (4th Cir.1995); *Peabody Coal Co. v. Director, OWCP*, 40 F.3d 906 (7th Cir. 1994); *BethEnergy Mines, Inc. v. Director, OWCP*, 32 F.3d 843 (3d Cir.1994) (same jurisdictional issue decided by this Court in *B & S Coal Co.*).

*See generally Pyro Mining Co. v. Slaton,* 879 F.2d 187, 189–90 (6th Cir.1989) (discussing adjudicatory and review procedures applicable to claims under the Act). Thus, the Federal Rules of Civil Procedure, which apply in adjudications under the LHWCA, also apply to adjudications under the Act, except to the extent that matters of procedure are provided for in the Act. Fed.R.Civ.P. 81(a)(6).

■ The Secretary of Labor is authorized to promulgate additional regulations pursuant to the Act, in conformity with 5 U.S.C. § 553 (the rulemaking provisions of the Administrative Procedure Act).[2] 30 U.S.C. §§ 936, 957. *Also see* 30 U.S.C. §§ 921(a) and (b), 922(a)(6), 932(a) and (h). Such additional regulations have been promulgated and are codified at 20 C.F.R. §§ 718—727. Those regulations relevant to the adjudication of claims under the Act are codified as *Subpart D—Adjudication of Claims; Adjudication officers.* 20 C.F.R. §§ 725.350—725.422. Fed.R.Civ.P. 60, regarding relief from judgments or orders, applies to adjudications under the Act, since the regulations promulgated regarding adjudication of black lung benefits claims do not displace the Rule. *See id.*

After an initial determination of eligibility, the DOL is authorized to make interim payments of benefits to claimants from the Fund established pursuant to 26 U.S.C. § 9501, upon giving notice of the claim and initial determination of eligibility to the responsible operator, which may either assume responsibility for the interim payments or contest liability pursuant to the prescribed procedures. 26 U.S.C. § 9501(d)(1)(A)(i); 30 U.S.C. § 922; 20 C.F.R. §§ 725.410—725.420, 725.522. Coal mine operators who have been determined to be liable for benefits due to disabled claimants must secure the payment of black lung benefits. *See* 30 U.S.C. §§ 932, 933; 20 C.F.R. § 725.420(c). Operators who have been determined to be responsible under the Act are required to repay the Fund for the amount of benefits determined to be attributable to the operator, plus interest thereon. 30 U.S.C. § 934; 20 C.F.R. §§ 725.421(c), 725.522(b), 725.602, 725.608(b) and (c). The Act specifies the applicable rate of interest. 30 U.S.C. § 934(b)(5); 20 C.F.R. § 725.608(c).

Claims for medical benefits only are filed, processed and adjudicated in the same way, except that the DOL is required to accept the Social Security Administration's finding of entitlement as its initial determination. 20 C.F.R. § 725.701A(b)(1). The DOL must notify an operator who has been determined liable for the payment of benefits to a miner. 20 C.F.R. § 725.704.[3] The operator is required to notify the miner and the authorized medical care providers of the operator's responsibility for medical services due to the miner's disability from pneumoconiosis. *Id.* For those black lung beneficiaries whose coal mine employment terminated on or after January 1, 1970, the agency must *"immediately authorize the payment of medical benefits and thereafter inform the responsible operator . . . of the operator's right to contest the claimant's entitlement for medical benefits."* 20 C.F.R. § 725.701A(b)(2) (emphasis added). Operators required to provide medical benefits "have the right to participate in the adjudication of the claim." 20 C.F.R. § 725.701A(f).

When a dispute arises concerning an MBO claim, the regulations provide that the DOL shall first attempt informal resolution; however, if informal resolution is unsuccessful, the DOL must refer the matter for hearing and adjudication by an administrative law judge (ALJ). 20 C.F.R. § 725.707(a) and (b). "During the pendency of such adjudication, the [DOL] may order the payment of medical

---

**2.** The Act further provides:

Except as otherwise provided in this chapter, the provisions of sections 551 to 559 and sections 701 to 706 of Title 5 [the Administrative Procedure Act sections regarding adjudications and judicial review] shall not apply to the making of any order, notice, or decision made pursuant to this chapter, or to any proceeding for the review thereof.

30 U.S.C. § 956.

**3.** The regulations do not detail what, if anything, this initial notice to the operator must provide, other than to inform the operator of "the names, addresses, and telephone numbers of the authorized providers of medical benefits chosen by an entitled miner. . . ." 20 C.F.R. § 725.704(a).

benefits prior to final adjudication under the same conditions applicable to benefits awarded under § 725.522." 20 C.F.R. § 725.707(b).

The Act provides a six-year statute of limitations for the DOL to collect from the responsible operator the repayment of benefits paid by the Fund. The limitations period runs from "the date on which the liability was finally determined." 30 U.S.C. § 934(b)(4)(B). As a tax lien arises by operation of law on the date of the tax assessment, a lien for reimbursement to the Fund arises upon the final determination of the operator's liability. *See* 20 C.F.R. § 725.603(c)(4); 26 U.S.C. §§ 6323(f) and (g); 26 U.S.C. §§ 6321–6322.

### III.

#### A. The government may correct its calculations and collect additional interest from Y & O.

The operator's argument on this issue is, in essence, that it should not be expected to do its own math and that it is unfair not to permit the operator to benefit from the Government's mistake. Y & O's theories for barring the Government from correcting its interest calculations fail. First, Y & O erroneously characterizes the DOL's demand for interest as a "final order." The final order as to this issue was the Benefits Review Board's December 27, 1985, decision and order affirming the ALJ's final determination of the miner's eligibility for black lung benefits and Y & O's responsibility for those benefits. Y & O did not appeal the Board's order within sixty days after the date it was filed; therefore, the Board's December 27, 1985, order became final. 33 U.S.C. § 921(c), *incorporated by* 30 U.S.C. § 932(a). In calculating the interest due the Government for the interim benefits DOL paid the claimant from the Fund, the DOL claims examiner was not issuing a "final order pursuant to [30 U.S.C. § 932(a) that was]

binding on both the Y & O and the [DOL]," as Y & O contends. Rather, because he had no discretion in performing the interest calculation, the assessment and terms of which were mandated by law, the DOL claims examiner was merely performing a ministerial function akin to that of an employee of the Internal Revenue Service who issues a tax assessment. *See, e.g., Bowman v. United States*, 824 F.2d 528, 531 (6th Cir.1987) (holding taxpayers liable for statutory interest that accrued on federal income tax deficiency, notwithstanding Government's failure to provide taxpayers with form and Government's tardiness in discovering deficiency and responding to their request for information).

Neither does res judicata bar the Government from revisiting the issue of the correct amount of interest on this claim, because the fact that the agency's initial demand was a ministerial act and not a final order makes res judicata inapplicable.[4] *See, e.g., Astoria Fed. Sav. and Loan Ass'n. v. Solimino*, 501 U.S. 104, 107–08, 111 S.Ct. 2166, 2169–70, 115 L.Ed.2d 96 (1991) (holding that the common law doctrines of collateral estoppel and res judicata apply to final determinations by administrative agencies acting in a judicial capacity). *See also Maxwell Co. v. NLRB*, 414 F.2d 477, 479 (6th Cir.1969) (holding that the principle of res judicata has no application to administrative agencies' exercise of powers other than their quasi-judicial powers). That Y & O could have litigated the correctness of the agency's interest calculation supports the conclusion that the agency's initial demand was not a final order, since the courts, rather than the agency, would have had the last word on that issue. *See id.*

Further, Y & O's reliance on the theory of administrative finality is misplaced. That theory generally bars a litigant from seeking review of administrative rulemaking after the statutory deadline for appeal has

---

4. Even if the DOL's demand for interest could be considered a final order, a government agency is permitted to reopen a case within one year to correct a mistake of fact. *O'Keeffe v. Aerojet–General Shipyards, Inc.*, 404 U.S. 254, 255, 92 S.Ct. 405, 406–07, 30 L.Ed.2d 424 (1971); Fed. R.Civ.P. 60(b). In this case, the error was detected and corrected within five months. There is nothing in the applicable statutes or regulations to support Y & O's argument that it should be permitted to benefit from the agency's error.

passed. *See generally, People v. Federal Communications Comm'n*, 905 F.2d 1217, 1245 (9th Cir.1990); *Eagle–Picher Indus., Inc. v. Environmental Protection Agency*, 759 F.2d 905, 911–12 (D.C.Cir.1985). In this case, where the rate of interest and the procedures relative to the assessment of the interest were prescribed by law, the DOL's demand for interest could not be considered to be administrative rulemaking. Also, the agency detected and sought to correct its error within the one-year period permitted by Fed.R.Civ.P. 60 for correcting an agency's mistake of fact. Thus, the theory of administrative finality is simply inapplicable.

■ Y & O's argument that the doctrine of equitable estoppel bars the Government from recalculating and collecting the correct amount of interest is similarly misplaced. Doubtless, it was irksome to Y & O to discover that the company owed more than $11,000 in additional interest on this claim. The DOL has conceded that its employee was negligent in making the original interest calculation. However, the district court's analysis of this theory was correct: affirmative misconduct by a government actor is required to succeed in equitably estopping the Government, and there is no evidence in this record of affirmative misconduct by the Government. *See Reich v. Y & O*, 858 F.Supp. at 1386–88 (citing, *inter alia, Heckler v. Community Health Servs., Inc.*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); *Richmond v. Office of Personnel Management*, 862 F.2d 294 (Fed.Cir.1988), *rev'd*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990); *Mukherjee v. Immigration and Naturalization Serv.*, 793 F.2d 1006 (9th Cir.1986)).

**B. Interest begins to accrue on an MBO claim when the DOL makes payment from the Fund.**

■ Y & O raises some valid policy concerns regarding this issue. For example, the operator has "the right to participate in the adjudication of the claim," *see* 20 C.F.R. § 725.701A(f), and may contest disputed MBO claims, *see* 20 C.F.R. § 725.707, and the DOL is required to give the responsible operator some notice of its responsibility for MBO claims, *see* 20 C.F.R. § 725.704; how-

ever, the DOL apparently has not always presented medical bills to the operator in a particularly timely fashion. The regulations provide for an arrangement whereby authorized medical care providers furnish entitled miners with medical care necessary to treat the miners' pneumoconiosis. Neither the statute nor the regulations mandates that the DOL promptly provide the responsible operator copies of medical bills for MBO claims, and, based on this case and the parties' references to the hundreds of other similar cases, it would appear that the informal dispute resolution process provided by 20 C.F.R. § 725.707(a) frequently does not work very well or very quickly. It is understandable that an operator would want to see copies of bills for medical treatment prior to payment of the claim in order to verify the amount of the claim and that the treatment was related to pneumoconiosis of a miner for whose disease the operator has been determined to be responsible. That approach, however, does not appear to be the method chosen by the responsible agency to administer these claims.

■ Although interest runs only against those MBO claims for which the operator is ultimately determined to be responsible, an operator must either accept the DOL's assertion that a particular claim is a proper MBO claim for which the operator is responsible, and thereby risk paying for a claim that may not be due to pneumoconiosis, or else risk incurring interest if the operator disputes the claim and it is ultimately determined to be a pneumoconiosis-related claim for which the operator is in fact responsible. Y & O objects that it is particularly unfair to charge an operator interest on an MBO claim paid by the DOL from the Fund prior to the operator's having been provided a copy of the bill.

However, the regulations governing MBO claim reimbursements incorporate the section of the regulations that provides for payment of interim benefits by the Fund and holds the operator liable for reimbursement plus interest for all payments for which the operator is determined to be responsible. 20 C.F.R. §§ 725.707(b), 725.522. Thus, when an operator contests an MBO claim and re-

quests a hearing, the regulations make the operator liable for interest *from the date of payment by the Fund* (which payment the agency has mandated will be made *immediately* for those black lung beneficiaries whose coal mine employment terminated on or after January 1, 1970, *see* 20 C.F.R. § 725.701A(b)(2)) on any MBO benefits for which the operator is later determined to be liable. This amounts to prejudgment interest.

The DOL points to the Fifth Circuit's decision in *United States v. Batson*, 782 F.2d 1307, 1315–16 (5th Cir.), *cert. denied*, 477 U.S. 906, 106 S.Ct. 3277, 91 L.Ed.2d 567 (1986), as support for its position that prejudgment interest is appropriate in MBO claims. In *Batson*, the court held that, although the basic interest statute under federal law provides that "interest shall be calculated from the date of the entry of the judgment," *see* 28 U.S.C. § 1961, the Government was entitled to interest from the date payments of cotton subsidies had been made rather than from the date of judgment in the district court. *Batson*, 782 F.2d at 1316. This was necessary to make the Government whole and to prevent the appellants from receiving "a windfall equal to the value of the use of the funds" paid. *Id.*

 The Black Lung Benefits Act is clearly a broad remedial statute. *See* 30 U.S.C. §§ 901—904. Courts have generally been more willing to award prejudgment interest in claims brought under remedial statutes. *See, e.g., United States v. Northeastern Pharm. and Chem. Co., Inc.*, 579 F.Supp. 823, 852 (W.D.Mo.1984) (discussing policy reasons for prejudgment interest awards and awarding prejudgment interest in CERCLA case) (citing *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988, 989 (6th Cir.1982). *But compare Amax Coal Co. v. Director, OWCP*, 801 F.2d 958, 964 (7th Cir. 1986); *Peabody Coal Co. v. Blankenship*, 773 F.2d 173, 175–77 (7th Cir.1985) (both holding that black lung claimants were not entitled to prejudgment interest) *with Clinchfield Coal Co. v. Cox*, 611 F.2d 47, 48 (4th Cir.1979) (holding that the employer must pay prejudgment interest on black lung benefits) (three cases involving not MBO claims, but

claims to establish initial entitlement to benefits under the Act).

In this case, Congress and the agency responsible for administering the Black Lung Benefits Act have decided that, as among the disabled miner, the coal mine operator and the Government, the operator should be the one to bear the cost of the delay attributable to the operator's questioning or contesting an MBO claim for which it is ultimately determined to be responsible. The agency's regulations and their administration are within the mandates of the Act. Thus, it is permissible to charge the responsible operator interest from the date of payments from the Fund.

### CONCLUSION

The decision of the district court is AFFIRMED.