Robert B. REICH, Secretary of Labor,
United States Department of
Labor, Plaintiff,

v.

CONSOL ENERGY INCORPORATED,
a corporation, Defendant.

Civil Action No. 94–2103.

United States District Court,
W.D. Pennsylvania.

Dec. 27, 1995.

Theresa C. Timlin, John M. Strawn, Deborah Pierce–Shields, U.S. Department of Labor, Philadelphia, PA, for plaintiff.

Lori J. Mason, Consol, Inc., Pittsburgh, PA, William S. Mattingly, Jackson and Kelly, Morgantown, WV, for defendant.

## MEMORANDUM OPINION

LEE, District Judge.

Before the Court are **Defendant, Consol Energy Inc.'s Motion for Partial Summary Judgment** (Document No. 9) and **Plaintiff's Cross–Motion for Summary Judgment** (Document No. 14).

The Court held oral argument on the motions on December 13, 1995, and after consideration of the arguments of the parties, the memoranda in support of the parties' respective positions and the record, the Court will grant the plaintiff's cross-motion for summary judgment (Document No. 14) and deny defendant, Consol Energy, Inc.'s motion for partial summary judgment (Document No. 9).

### Factual Background

The plaintiff, Robert B. Reich, Secretary of Labor, ("Secretary") filed this action on December 9, 1994, pursuant to the authority set forth in 30 U.S.C. §§ 934(b)(4)(A) and 934(b)(4)(B) to recover unpaid interest due on the amount of medical benefit payments previously reimbursed to the Black Lung Disability Trust Fund ("Trust Fund") by the defendant which is the parent corporation of or the successor in interest to the parent company of various coal mine operators who employed 31 coal miners to whom the Fund paid medical benefits.

Counts IV, VII, IX, XVIII and XXVII were withdrawn by stipulation and approved by the Court. Therefore, the Secretary seeks interest on the medical payments paid to or on behalf of the 26 remaining miners.

The defendant was determined to be responsible for the payment of medical benefits for the 26 coal miners pursuant to the Black Lung Benefits Act, 30 U.S.C. §§ 901, *et seq*, as amended. The Fund paid the medical benefits to or on behalf of the 26 miners while the defendant contested its liability.

Thereafter, the defendant reimbursed the principal amount of the medical benefits incurred by the fund in paying the benefits to or on behalf of the miners.

Following the reimbursements of defendant, the Department of Labor computed the interest owed from the date of the Trust Fund's initial disbursement until the date of defendant's reimbursement using applicable statutorily mandated interest rates.

The Secretary then demanded payment of the computed interest and the defendant refused to pay same. Liens have attached to the defendant's property by operation of law for the total amount of interest due, and the Secretary is seeking judgment in his favor in the amount of $206,676.21.

In its motion for partial summary judgment, the defendant has raised the defense that the claims of the Secretary for interest on the reimbursed medical benefit payments is barred by the applicable statute of limitations of six years found in 30 U.S.C. § 934(b)(4)(B).[1]

Moreover, in opposition to the Secretary's cross motion for summary judgment, the defendant asserts various arguments:

(i) summary judgment is not available for the Secretary since there exists a genuine issue of fact with regard to the amount of interest due, which argument is based on a number of demand letters sent by the Division of Coal Mine Workers Compensation to the defendant or its predecessors which vary in the amount of interest presently sought by the Secretary[2];

(ii) summary judgment is not available on Counts VI and XXIV which arise out of the Johnstown, Pennsylvania, Office of Workers Compensation Programs in that a memorandum from that office purportedly offered not to assess interest against mine operators or their insurers if medical bene-fit payments were reimbursed to the Fund on or before July 28, 1989, and in reliance thereon, the defendant reimbursed those claims before that date. Also, in that regard, defendant asserts that the Johnstown office treated mine operators differently in that notwithstanding that the medical benefits in question were reimbursed by the defendant before July 28, 1989, interest continued to be assessed on those claims.

(iii) there is a genuine question as to whether the Secretary is estopped from collection of interest on Count XII based on a letter sent regarding that claim from the Columbus, Ohio, office of the Division of Coal Mine Workers Compensation in which the author opines: "It seems equitable to me to waive interest charges ..." and that the inordinate delay on the part of the Deputy Commissioner in commuting the amount of benefits due including interest and giving timely notice thereof to the defendant estops the collection of these claims.

(iv) the Secretary failed to comply with 20 C.F.R. § 725.478 which requires: "... immediately upon receipt of a decision, an order awarding benefits, the Deputy Commissioner shall compute the amount of benefits due, including any interest or penalties, and the amount of reimbursement of the Fund, if any, and so notify the parties, and therefore, the Secretary is estopped from collecting on those claims where there was an inordinate delay in making the requisite computation and notification of the defendant."[3]

The defendant asserts § 725.478 estops the plaintiff's claim on those claims where there was an inordinate delay on the part of the Deputy Commissioner in making the compu-

---

1. The defendant does not seek summary judgment as to Count XXIII.

2. Following the deposition of James L. DeMarce, Director of Coal Mine Workers Compensation, the Secretary, with leave of court, amended his complaint to delete Counts III, XXVI, XXVIII and to correct the interest calculation originally claimed in Counts II, VI, X, XV and XX, and to supplement the calculations for Count XXX.

3. The defendant contends and Director DeMarce, in his deposition, concedes that there was a delay of over six years from the date of the initial determination of defendant's responsibility in some of the claims in connection with the required computation and notice to the defendant as the responsible mine operator.

tation and notifying the responsible mine operators.

## Discussion

The U.S. Court of Appeals for the Third Circuit in *BethEnergy Mines v. Dir., Office of Workers' Comp.*, 32 F.3d 843 (3d Cir.1994) succinctly describes the applicable rubric under the Black Lung Benefits Act in a fact situation strikingly similar to that here, as follows:

The Black Lung Benefits Act ("the Act"), 30 U.S.C. § 901 *et seq*, establishes a comprehensive legislative scheme designed to compensate miners for medical problems and disabilities related to pneumoconiosis (black lunch disease).

The Act incorporates by reference the claim management and adjudication procedures of the Longshore and Harbor Workers' Compensation Act (the "Longshore Act") to govern the Department of Labor's administration of Part C of the Act (the employer-funded federal workers' compensation program applicable to employees who have become totally disabled or died due to pneumoconiosis.). *See* 30 U.S.C. § 932(a) (incorporating most of 33 U.S.C. §§ 901–950); *see also Louisville and Nashville R.R. Co. v. Donovan*, 713 F.2d 1243, 1247 n. 2 (6th Cir.1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984).

In this case, our concern is with claims made to the Department of Labor for medical benefits only. Therefore, there is no need to review the history of the involvement of the Social Security Administration and the manner of resolving claims made for miners' disability or death, all of which has been reviewed in prior cases. *See, e.g., Pittston Coal Group v. Sebben*, 488 U.S. 105, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988); *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987); *Elliot Coal Mining Co. v. Director, OWCP*, 17 F.3d 616, 627–628 (3d Cir.1994); *Helen Mining Co. v. Director, OWCP*, 924 F.2d 1269, 1271–72 (3d Cir.1991).

As is set forth in these cases, the Act established the Black Lung Disability Trust Fund, which is financed by a manufacturer's excise tax on coal. That Fund pays benefits directly to claimants not only when there is no responsible Operator, but also before a responsible Operator is determined and in other circumstances established by law. *See, e.g., Elliot Coal*, 17 F.3d at 628; *Helen Mining*, 924 F.2d at 1272; 20 C.F.R. § 725.522 (1993).

In certain circumstances, as those presented in these cases, when miners seek payment of medical expenses incurred for treatment of pneumoconiosis ("medical benefits only" or "MBO" claims), the Fund pays claimants before Operator liability is determined, *see* 20 C.F.R. § 725.701A(b), and the Department will seek reimbursement from the responsible Operator. Sometime in 1988, the Department adopted a new agency policy to collect interest on medical expenditures made by the Fund and later reimbursed by the Operator or carrier. Pursuant to this policy, the date on which the Fund paid the medical bill is the accrual date for interest. *See* 20 C.F.R. § 725.608(b).

In each of the 26 cases involved here, after a determination was made that a valid MBO claim had been submitted, the District Director approved the claimant-coal miners' requests for medical treatment expenses, determined that the defendant was the responsible operator and at some time before or after determination in that regard, received a request from the claimant or his medical providers for payment of specific bills for treatment which, after the Department or its agent approved, was paid by the Trust Fund. Thereafter, the Department sought reimbursement from the operator. In many of the cases, the operator requested documentation of the medical expenses and in all of the 26 cases, the defendant ultimately reimbursed the Fund for payment of the principal amount of the medical expenses.

Following the defendant's acceptance of responsibility for reimbursement of the MBO, the Department, pursuant to its policy, then computed and billed the operator for interest due on the underlying claims, which interest was assessed from the date the Fund paid the claim.

## A. Statute of Limitations

The defendant contends that the amount of the underlying liability for the various MBO claims was clearly and finally determined more than six years prior to the filing of the complaint and therefore the interest claims which were not asserted until after the Fund was reimbursed for the medical benefits by the defendant, are all barred by the statute of limitations.

The Court finds that none of the 26 claims for interest in this proceeding are barred by the applicable statute of limitations because the complaint was filed within six years of the "final determination" in each of the underlying cases that defendant was responsible for reimbursement for the corresponding medical benefit payments made by the Fund.

In its brief, the defendant correctly notes,

In the claims which underlie this matter, the miners sought payment of medical expenses incurred for treatment of pneumoconiosis, known as medical benefits only or "MBO" claims. *See* 20 C.F.R. § 725.701A(b). Where operators controvert the District Director's determination in a claim, the operator is not legally obligated to begin the payment of benefits. 20 C.F.R. §§ 725.420, 725.522(b). Instead, the Fund commences payment of benefits. 26 U.S.C. § 9501(d)(a)(A); 20 C.F.R. §§ 725.420 and 725.522(b). The employer must reimburse the Fund once it is ultimately determined liable for payment of the benefits. 30 U.S.C. § 934(b)(1).

Defendant, Consol Energy, Inc.'s Memorandum in Support of Its Motion for Partial Summary Judgment, p. 3, 4.

However, the defendant improperly equates "final determination" of defendant's responsibility for medical payments only with the initial determination made by the Social Security Administration that the miner is entitled to benefits.

The Court finds that the Secretary is correct in his contention:

Contrary to Consol's argument, the Act, the Secretary's implemented regulations and the relevant case law explicitly hold that the final determination for each specific medical treatment expenditure arises when the operator agrees to reimburse the Trust Fund or is found reliable for each expenditure. In other words, the statute of limitations begins to run when Consol agreed to pay for expenditures, not when it conceded its general liability for the claimants' medical treatment. The earliest such payment was December 14, 1988, and therefore the complaint was timely filed with regard to each of the 26 causes of action.

Plaintiff's Reply to Defendant's Motion for Partial Summary Judgment, p. 3.

■ Based on the record in this case, the Court finds that there was no final order entered determining the defendant's liability for each of the underlying medical benefits until after the defendant agreed to reimburse the Fund for the medical benefit payment expenditures made by it to or on behalf of the 26 coal miners.

On the date defendant claims that liability "was finally determined," defendant had not agreed to reimburse the Fund for any of the medical benefits on which the Secretary's claim is based.

In fact, defendant subsequently requested verification of the medical bills which the Fund had paid and would not reimburse them without reviewing the compensability of each item. The Court's conclusion in this regard is consistent with the teaching of the Court in *BethEnergy Mines, Inc., v. Dir., OWCP*, at 843, 847, *supra,*

Though framed as contests between the particular Operator and the Fund over reimbursement, these *determinations* provide the means by which an Operator may challenge the validity of all or part of the miner's initial claim, including each *medical expense*, even though it has already been paid by the Fund. Proceedings before the ALJ and the Board in these matters thus center on the evaluation of the claimant's entitlement to payments already disbursed by the Fund. (Emphasis supplied).

Moreover, *citing Sun Shipbuilding & Dry Dock Co. v. Benefits Review Board, United States Dept. of Labor,* 535 F.2d 758, 761 (3d Cir.1976) (*per curiam* ), the Court noted: "A

decision is not final where the extent of the damage remains undetermined," and, "The Operators have withdrawn their controversions to the specific medical expenses. *Thus, there was a final determination in each case." Id.* at 849. (Emphasis supplied). *See Peabody Coal Co. v. Direc., OWCP,* 40 F.3d 906 (7th Cir.1994) where the court said, "We agree with the Third Circuit's conclusion [in *BethEnergy Mines, Inc.*] that because the amount of medical benefits has been agreed upon, there has been a *'final determination'." Id.* at 909. (Emphasis supplied).

The Secretary could not have filed this action in the district court until after the administrative procedures determined whether the benefits paid were eligible for reimbursement and what was the amount owed. *BethEnergy Mines, Inc., v. OWCP, supra; Howell v. Unit Coal Corp.,* 774 F.Supp. 429, 431 (E.D.Ky.1991).

It is also notable that until there has been a determination of general liability of the responsible coal mine operator for the disability benefits and medical benefits payable to or on behalf of a coal miner, the operator cannot oblige the Secretary to produce documentation to verify the amount expended by the government. *Lute v. Split Vein Coal Co.,* 11 Black Lung Report (N.B.) 1–82 (Ben.Rev.Bd.1987); *also cf. Doris Coal Co. v. Direc., OWCP,* 938 F.2d 492 (4th Cir. 1991).

The Secretary correctly asserts that the procedure authorized by the Act and the regulations is a "bifurcated process" which defendant "seeks to portray as a single procedure with a single determination so that it can avoid its responsibility for interest on the principal sums which it has agreed were due to the Trust Fund."[4]

Also *see* 20 C.F.R. § 725.707 of the Secretary's implementing regulations which provides the administrative procedure for resulting disputes over particular medical bills. That procedure "like the mechanism for resolving the threshold questions of miner eligibility and company liability, provides for initial determination by the appropriate District Director for the Department of Labor to be followed by ALJ [Administrative Law Judge] review, Benefit Board review and appeal to the Courts of Appeals." *Connors v. Amax Coal Co., Inc.,* 858 F.2d 1226, 1228 (7th Cir.1988); *cf.* also *Connors v. Tremont Mining Co.,* 835 F.2d 1028, 1030–1031 (3d Cir.1987).

Therefore, the Court finds that the Secretary's complaint was filed within six years of the earliest date of the "final determination" of defendant's liability for the MBO in these 26 cases.[5]

**B. There exists no genuine issue of material fact with regard to the amount of interest due.**

As noted, the defendant contends there is an issue with regard to the amount of interest due because of the variance between the amount of interest stated in a number of demand letters of the DOL and the amount of interest set forth in the exhibits to the amended complaint and the exhibits to plaintiff's cross motion for summary judgment.

Notwithstanding its contention in this regard, the defendant fails to point to any error in the present calculations as to the interest rate, the underlying medical benefits on which the interest is computed, the dates payment were made or any other aspect. Moreover, defendant does not offer any supporting "affidavits or depositions" to bolster

---

4. Although the defendant seems to challenge the validity of the Secretary's bifurcated procedure with regard to first determining the liability of the responsible mine operator for payment of benefits and the "final determination" for reimbursement of specific medical benefits paid by the Fund, the Court finds that the Secretary's procedure is in accordance with the regulations and although the Court is not bound by the Labor Department's regulations, they should be given deference and presumed valid unless there

is a conflict with a statute. *W.J. Usery, Jr., Secy. of Labor v. Allegheny County Institutional District,* 544 F.2d 148 (3d Cir.1976).

5. The earliest date of reimbursement by defendant to the Fund for medical payments paid by the Fund for all of the 26 claims is December 14, 1988. (Claim of Ted Pruneski, Exhibit to Plaintiff's Cross Motion for Summary Judgment). The original complaint was filed December 9, 1994, short of six years from that date.

its contention, but rather claims that the disparity between the amounts of interest asserted in the demand letters and that asserted in the amended complaint, declaration of James DeMarce and the exhibits to plaintiff's cross motion for summary judgment, of itself raises a genuine issue of material fact. The Court finds that the defendant has the ability to determine if there was any error in the present calculations and its failure to do so forecloses its reliance on there being a genuine issue of material fact in that regard.

Moreover, the Court finds that the Secretary has properly computed the interest on the 26 claims.[6]

### C. Summary judgment is available on the two claims arising out of the Johnstown Office of the District Director.

The defendant relies on the general offer of the Johnstown District Office to forego interest on underlying medical benefits if reimbursement were made by the defendant to the Fund by July 28, 1989. The defendant further states that that District Office treated mine operators differently in this regard because the interest continued to accrue on Counts VI and XXIV, even though the reimbursement payments had been made by it by that date. For the reasons set forth in *Reich v. Travelers Ins. Co.*, CA93–1892 (W.D.Pa. 1995), the Court finds that the defendant's equitable defense in connection with those two claims is without merit.

### D. There exists no genuine question or issue of material fact as to whether the plaintiff is estopped from collection of interest on the claim asserted in Count XII

The Court finds there is no issue of material fact in connection with Count XII because the author of the letter from the Columbus, Ohio, district office never made a representation, but merely opined, "It seems equitable to me to waive interest charges on this last group as well," and the defendant fails to establish the requisite elements of that of the defense of equitable estoppel.

The Court finds that the record fails to establish the necessary elements of the defense of equitable estoppel, the burden of proof of which is on the defendant: (i) a misrepresentation by another party; (ii) the defendant's reasonable reliance upon the other party's misrepresentation; (iii) harm as a result of this reliance; and (iv) in cases against the government, a form of misconduct by an agent of the government. *U.S. v. Asmar*, 827 F.2d 907, 912 (3d Cir.1987); *Reich v. The Youghiogheny and Ohio Coal Co.*, 66 F.3d 111 (6th Cir.1995) (DOL not equitably estopped from correcting its calculations and collecting additional interest due the Black Lung Disability Trust Fund from coal mine operator after it initially miscalculated amount of interest due and received operator's prompt payment because there was no evidence of firm government misconduct).

### E. The failure of the administrator of the Black Lung Program to comply with 20 C.F.R. § 725.478 does not bar the claim of the Secretary.

Section 725.478 requires that:

Immediately upon the receipt of a decision and order awarding benefits, the Deputy Commissioner shall compute the amount of the benefits due, claim any interest or penalties, and the amount of reimbursement of the Fund, if any, and so notify the parties.

Defendant contends that while there is no time frame to which a penalty or other consequence attaches in § 725.478, nevertheless, the six-year statute of limitations contained at 30 U.S.C. § 934 serves as the penalty for untimely action.

The Court finds that the defendant's defense asserted under § 725.478 is without merit. As soon as the defendant accepted liability for the underlying medical benefits, the Secretary, within a few months, computed the interest and made a claim for defendant's reimbursement of that interest. It is notable that while the defendant relies on § 725.478 as a defense in connection with the

---

**6.** Interest on a claim for reimbursement of MBO is properly calculated from the first date on which such benefit is paid by the Trust Fund. 30 U.S.C. § 934(b) and 20 C.F.R. § 725.608(b).

Secretary's claims for interest, it did not assert that defense in connection with the claims for reimbursement of the principal amount of the medical benefit claims which were not made until many years after the initial determination that defendant was the responsible mine operator, and the defendant voluntarily paid the same.

■ The Court concurs with the holding of U.S. Court of Appeals for the Sixth Circuit in *Reich v. Youghiogheny and Ohio Coal Co., supra,* at 116, as follows:

> Although interest runs only against those MBO claims for which the operator is ultimately determined to be responsible, an operator must either accept the DOL's assertion that a particular claim is a proper MBO claim for which the operator is responsible, and thereby risk paying for a claim that may not be due to pneumoconiosis, or else risk incurring interest if the operator disputes the claim and it is *ultimately determined* to be a pneumoconiosis-related claim for which the operator is in fact responsible. (Emphasis supplied).

The coal company defendant there objected that it was unfair to charge an operator interest on an MBO claim paid by the DOL from the Fund prior to the operator's having been provided a copy of the bill. However, the Court there held that liability of the responsible mine operator for interest on the underlying claims was appropriate under the Act and the regulations and is "necessary to make the government whole and to prevent the appellants from receiving 'a windfall equal to the value of the use of the funds' paid.... The Black Lung Benefits Act is clearly a broad remedial statute and ... 'Congress and the agency responsible for administering the Black Lung Benefits Act had decided that, as among the disabled miner, the coal mine operator and the Government, the operator should be the one to bear the cost of the delay attributable to the operator's questioning or contesting an MBO claim for which it is ultimately determined to be responsible.' And 'the agencies' regulation and their administration are within the mandates of the Act. Thus, it is permissible to charge the responsible operator interest from the date of payments from the Fund." *Id.* at 117.

**Conclusion**

■ Although the record discloses there was delay on the part of the DOL in seeking reimbursement for the underlying medical benefits paid to or on behalf of the 26 miners, the Court finds that only Congress can relieve the responsible mine operator from the payment of interest on underlying medical benefits where there has been an inordinate delay in presentation of a claim for the specific medical benefits but where suit is filed within six years of the "final determination" of the coal operator's liability.

The Court further notes that the Secretary in this action only seeks interest from the date of the payment of the medical benefits by the Fund to the date of its reimbursement by the defendant and the Secretary does not appear to seek interest from the latter date to the date of judgment.

An appropriate order will be entered granting plaintiff's motion for summary judgment on all remaining 26 counts, and denying defendant's motion for summary judgment.

**ORDER OF COURT**

AND NOW, this 27th day of December, 1995, it is hereby **ORDERED AS FOLLOWS:**

(1) **Defendant, Consol Energy Inc.'s, Motion for Partial Summary Judgment** (Document No. 9) is **DENIED;**

(2) **Plaintiff's Cross–Motion for Summary Judgment** (Document No. 14) is **GRANTED;**

(3) Judgment is hereby entered in favor of the plaintiff and against the defendant in the amount of $206,676.21.